28 F.3d 104
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James P. ANDERSON, Mark Bradford, Herbert Coddington,
Kenneth B. Gay, Randy Haskett, Michael S. Hill, Shawn Hill,
Daniel S. Jenkins, Ronald L. Sanders, James R. Scott,
Richard B. Stewart, Melvin Turner, Michael J. Wader, Darren
Wader, Darren C. Williams, Jane Does 1-15, John and Jane Doe
Grandparents 1-30, Plaintiffs-Appellants,
v.
Daniel VASQUEZ, in his official capacity as Warden of San
Quentin Prison, Defendants-Appellees.
 No. 92-16631.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 8, 1994.
Decided July 13, 1994.
 
 1
 Before: ALARCON and FERNANDEZ, Circuit Judges, and WILSON, District Judge[1]
 
 MEMORANDUM[2]
 I.
 
 2
 Presently before the Court is a Civil Rights action filed under 42 U.S.C. 1983. The District Court dismissed the action with prejudice by means of an order dated August 21, 1992. The District Court also denied Appellants leave to amend for purposes of adding a claim under the Equal Protection clause of the Fourteenth Amendment.
 
 II.
 
 3
 Dismissal is appropriate pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it appears beyond doubt that plaintiffs can prove no set of facts in support of the claim which would entitle them to relief. Buckey v. County of Los Angeles, 968 F.2d 791 (9th Cir.1992), cert. denied, 113 S.Ct. 599 (1992).
 
 
 4
 We review de novo the decision to dismiss. Oscar v. University Students Co-operative Association, 965 F.2d 783, 785 (9th Cir.1992), cert. denied, 113 S.Ct. 655 (1992). We may affirm on any grounds supported by the record. Kruso v. International Tel. & Tel., Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3271 (1990).
 
 III.
 
 5
 Appellants first argue that the District Court erred in dismissing their claim that San Quentin's policy of refusing the inmates conjugal visits violates the Eight Amendment because it amounts to a deprivation of the inmates' constitutional rights.
 
 
 6
 A prison policy violates the Eighth Amendment if it involves the "unnecessary and wanton infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 356 (1981); McQueary v. Blodgett, 924 F.2d 829 (9th Cir.1991). Deprivation of constitutional rights may amount to such unnecessary and wanton infliction of pain. Turner v. Safley, 482 U.S. 78, 94, 107 S.Ct. 2254 (1987) (finding a regulation prohibiting inmate marriage unconstitutional).
 
 
 7
 A prisoner does not, however, retain all constitutional rights held by the civilian population. Instead, the prisoner retains only those rights that "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Turner, 482 U.S. at 94, citing Pell v. Procunier, 94 S.Ct. 2800 (1974).
 
 
 8
 Conjugal visits are inconsistent with the principles of incarceration and isolation from society. It has long been held, in this circuit and in others, that prisoners do not retain the right to contact visits. See Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir.1986) cert. denied 481 U.S. 1069, 107 S.Ct. 2462 (1987) (prisoners have no right to contact visits); Hernandez v. Coughlin, 18 F.3d 133 (2nd Cir.1994) (prisoners have no right to conjugal visits because "[r]ights of marital privacy ... are necessarily and substantially abridged in the prison setting"); Bellamy v. Bradley, 729 F.2d 416, 420 (6th Cir.1984) cert. denied 469 U.S. 845, 105 S.Ct. 156 (1984) ("prison inmates have no absolute constitutional right to visitation"); Ramos v. Lamm, 639 F.2d 559, 580 n. 26 (10th Cir.1980) cert. denied, 450 U.S. 1041, 101 S.Ct. 1759 (1981) ("weight of present authority clearly establishes that there is no constitutional right to contact visitation ... we agree with this view."); Lynott v. Henderson, 610 F.2d 340, 342 (5th Cir.1980) ("convicted prisoners have no absolute constitutional right to visitation"); Peterkin v. Jeffes, 661 F.Supp. 895, 913-914 (E.D.Pa.1987) ("the weight of authority concludes that a ban on contact visits for convicted persons does not run afoul of the Eighth Amendment"), modified, 855 F.2d 1021 (3d Cir.1988). C.f., Block v. Rutherford, 468 U.S. 576, 104 S.Ct. 3227 (1984) ("That there is a valid rational connection between a ban on contact visits and internal security of a detention facility is too obvious to warrant discussion.").
 
 
 9
 Turner does not mandate a contrary result. In holding that prisoners retain the right to marriage, the Turner Court noted that "the right to marriage, like many other rights, is subject to substantial restrictions as a result of incarceration." Turner 107 S.Ct. at 2265. In listing the "attributes" of marriage which survive incarceration, the Court notably declined to mention the right to procreate. Instead, the Court stated that prisoners retain the "the expectation that the marriage may someday be fully consummated." Id. at 2265 (emphasis added).
 
 
 10
 In brief, the right to conjugal visits does not survive incarceration. We therefore affirm the District Court's ruling that San Quentin's refusal to grant inmates such privileges does not amount to a violation of the Eight Amendment.
 
 IV.
 
 11
 Appellants also argue that the prohibition of conjugal visits violates their right to procedural due process.
 
 
 12
 The Supreme Court has held that, where a state statute creates a "liberty interest" in prisoners, the state must follow certain procedural safeguards prior to deprivation of that interest. See Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864 (1983). The failure to follow the procedural safeguards may amount to a violation of the prisoners' right to due process under the Fourteenth Amendment. Id. at 466. Accord Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904 (1989).
 
 
 13
 A liberty interest is, however, only created where the state statute contains " 'explicitly mandatory language', i.e. specific directives to the decision maker that if the regulations' substantive predicates are present, a particular outcome must follow...." Kentucky, 490 U.S. at 463 (finding that statute which provided that "it is the policy ... to respect the rights of inmates to have visits" did not create a liberty interest because it did not employ mandatory language). Accord Hewitt, 459 U.S. at 471 (finding that statute which provided that, in order for a prisoner to be transferred, certain procedures " 'shall', 'will' or 'must' be employed," created a liberty interest).
 
 
 14
 In the present case, Appellants argue that California Penal Code Sec. 2600 creates a liberty interest. This statute is, however, nothing more than a general statement that prisoners may not unduly be deprived of their rights. It does not specifically address the right to visitation, nor does it employ mandatory language such as "shall," "will" or "must." Under Kentucky and Hewitt, Penal Code Sec. 2600 is far too nebulous for the Court to find that it instills in death row inmates the right to have contact visits.
 
 
 15
 Because no California statute creates a liberty interest in contact visits, we affirm the District Courts ruling that the San Quentin policy of denying conjugal visits does not violate procedural due process rights.
 
 V.
 
 16
 Finally, Appellants argue that they should have been permitted to amend their complaint to include a claim that the San Quentin policy of denying condemned inmates conjugal visits, and at the same time granting such visits to non-condemned inmates, violates their right to Equal Protection.
 
 
 17
 Pursuant to Rule 15(e) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. See Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 230 (1962). But, leave to should be denied where amendment would be futile. Id. at 230.
 
 
 18
 It is true that the Fourteenth Amendment right to Equal Protection survives incarceration. See e.g. Baumann v. Arizona Department of Corrections, 754 F.2d 841 (9th Cir.1985); Brown v. Sumner, 701 F.Supp. 762 (D.Nev.1988). However, in order to prevail on a claim that the San Quentin policy violates Equal Protection, Appellants would have to show that condemned inmates are treated differently than other inmates similarly situated. In other words, Appellants would have to show that condemned inmates and non-condemned inmates are similarly situated with respect to contact visits. They are not.
 
 
 19
 Considering condemned inmates have been sentenced to death, they pose unique security problems. Similarly, while the state has an interest in rehabilitating inmates who will some day become part of society, the state has no such interest in rehabilitating condemned inmates.
 
 
 20
 In other words, the disparate treatment of inmates is rationally related to the state's interests in prison security and rehabilitation. See, Wilson v. Nevada Department of Prisons, 511 F.Supp. 750, 753 (D.Nev.1981); Smith v. Coughlin, 577 F.Supp. 1055, 1062 (S.D.N.Y.1983), aff'd in part, 748 F.2d 783 (2d Cir.1984).
 
 
 21
 Thus, we affirm the District Court's denial of leave to amend.
 
 V.
 
 22
 Appellants also argue that San Quentin's refusal to provide a means of preserving sperm for purposes of artificial insemination violates their constitutional rights.
 
 
 23
 We need not decide the constitutional issues because the District Court correctly found that the challenge to this policy is not ripe for consideration. A claim is not ripe for consideration if administrative prerequisites are prescribed by statute. See United States v. California Care Corp., 709 F.2d 1241 (9th Cir.1983). Similarly, where agency regulations provide administrative remedies, it is within the sound discretion of the court to find that the administrative remedies must be exhausted prior to hearing the case. Aleknagik Natives Ltd. v. Andrus, 648 F.2d 496 (9th Cir.1980). A dismissal for ripeness is equivalent to a dismissal for lack of subject matter jurisdiction. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.1989), cert. denied, 493 U.S. 993, 110 S.Ct. 541 (1989). A dismissal for lack of jurisdiction is not a disposition on the merits and is therefore without prejudice. Cook v. Peter Kiewit Sons Co., 775 F.2d 1030, 1035 (9th Cir.1985), cert. denied, 476 U.S. 1183, 106 S.Ct. 2619 (1985).
 
 
 24
 Section 3084 of the California Code of Regulations provides a detailed administrative procedure for inmates seeking to challenge conditions of confinement. Plaintiffs have not alleged any attempt to comply with this statute. Adjudication of the present action would therefore require the District Court to speculate as to the outcome of the administrative procedure had Appellants complied. The District Court was correct in refusing to do so.
 
 
 25
 In other words, the District Court was correct in dismissing Appellants' claim that San Quentin's refusal to provide a means of preserving sperm violates their rights. However, because the dismissal should have been without prejudice, we must reverse the ruling insofar as it dismissed this claim with prejudice.
 
 VI.
 
 26
 The District Court is AFFIRMED insofar as it dismissed Appellants' claim that the rights of the condemned inmates were violated by the denial of conjugal visits. The District Court is also AFFIRMED insofar as it denied Appellants leave to amend to include an equal protection challenge.
 
 
 27
 The District Court is, however, REVERSED insofar as it dismissed with prejudice Appellants' claim that the rights of the condemned inmates were violated by the policy of denying them means of preserving their sperm. The Court is instructed to enter a judgment dismissing that claim without prejudice.[3]
 
 
 28
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 [1]
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 [2]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [3]
 The attempt to sue on behalf of Doe plaintiffs is improper, so we do not address the purported claims of Doe girlfriends, wives and grandparents