**Brenda EDWARDS, Plaintiff,**

v.

**NIAGARA CREDIT SOLUTIONS, INC., a New York Corporation, Defendant.**

**Civil Action No. 1:07–CV–2396–BBM.**

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 13, 2008.

**1348**

James Marvin Feagle, Law Office of James M. Feagle, P.C., Decatur, GA, Kris Kelly Skaar, Law Office of Kris Skaar, Marietta, GA, for Plaintiff.

Michael D. Robl, Thomerson, Spears & Robl, LLC, Savannah, GA, for Defendant.

### ORDER

BEVERLY B. MARTIN, District Judge.

This case, brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), is before the court on the Report and Recommendation of the Magistrate Judge (the "R & R") [Doc. No. 19]. The R & R recommends that the court grant Plaintiff Brenda Edwards's ("Ms. Edwards") Motion for Summary Judgment. [Doc. No. 16]. Defendant Niagara Credit Solutions, Inc. ("Niagara") has filed Objections to the R & R [Doc. No. 20], which the court considers on a *de novo* basis.

### I. Niagara's Objections and Standards of Review

Niagara makes four objections in its request for review: (1) that the answering machine messages at issue are not "communications" under the FDCPA, (2) if they are "communications," that it did not violate 15 U.S.C. §§ 1692d(6) & 1692e(11) because the messages did not include harassing language, (3) that the "bona fide error" defense is available, and (4) that the statutory maximum damage award should not be awarded. Niagara also requests that this court engage in *de novo* review of certain portions of its prior briefs. To that end, it has included objections simply for "reasons stated in Niagara's brief opposing summary judgment." (Def.'s Objections 22.) And, instead of objecting to particular facts, Niagara has attempted to incorporate "facts by reference [included in prior briefs] as if set out fully in this Objection." (*Id.* at 3.)

 As an initial matter the court declines to consider *de novo* Niagara's arguments that are not set forth as "specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2); *see Tauber v. Barnhart,* 438 F.Supp.2d 1366, 1373 (N.D.Ga.2006) (Story, J.). Where Niagara has not raised a specific objection, the court reviews the R & R for clear error. *Tauber,* 438 F.Supp.2d at 1373–74 (citing *HGI Assocs., Inc. v. Wetmore Printing Co.,* 427 F.3d 867, 873 (11th Cir.2005)); *Chamblee v. Schweiker,* 518 F.Supp. 519, 520 (N.D.Ga. 1981) (O'Kelley, J.). Clear error review asks if, "after viewing all the evidence, we are 'left with the definite and firm conviction that a mistake has been committed.'" *HGI Assocs.,* 427 F.3d at 873 (quoting *United States v. United States Gypsum*

*Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

## II. Background

Niagara has not specifically objected to the Magistrate Judge's recitation of the facts. Instead, it attempts to "incorporate[ ] those facts by reference" that were stated in its "motion for summary judgment, the Sworn Declaration submitted in support of its brief, and its separate statement of additional material facts .... *as if* set out fully in this Objection." (Def.'s Objections 3 (emphasis added).) This does not constitute a specific written objection to the R & R. The court has reviewed the Magistrate Judge's recitation of the facts under the clear error standard and finds none. Therefore, the court adopts those facts as stated in the R & R. The following is a brief summary of the most relevant facts in a light favorable to Niagara.

Niagara is a debt collector subject to the provisions of the FDCPA. In an attempt to collect a consumer debt from Ms. Edwards, Niagara contacted Ms. Edwards through letters, phone calls, and a series of approximately 14 messages on her answering machine from July through October 2007. In September 2007 Niagara left a message on Ms. Edwards's answering machine stating that the message was "important." (Pl.'s Statement of Material Facts ¶¶ 12–14.) The message did not state the name of the Defendant. In October 2007 Niagra left a message on Ms. Edwards's answering machine that stating "[t]his message is intended for Brenda Edwards. Please contact Jennifer [last name not clear] at 1 800 381 0416, my extension is 220. When returning my call have your file number available, it's 1250740." (*Id.* ¶ 15.) Also, in October 2007 Niagara left another message on Ms. Edwards's answering machine stating "Brenda Edwards, contact Mrs. Strickland at 1–800–381–0416 extension 220. When returning the call have your file number available,

please, 1250740." (*Id.* ¶ 16.) Niagara's company policy when leaving a message on the answering machine is "NOT to indicate that the call is from 'Niagara Credit Solutions, Inc.' The policy is also NOT to indicate that the call is from a 'debt collector' or for the 'purpose of collecting a debt." (Def.'s Statement of Additional Material Facts ¶ 18.)

Ms. Edwards filed a Complaint against Niagara alleging that the voice messages left on her answering machine violate the FDCPA. Specifically, she contends because the messages fail to identify Niagara as the caller and fail to disclose that the messages were from a debt collector, they violate the FDCPA. On April 24, 2008 Ms. Edwards filed a Motion for Summary Judgment. On October 21, 2008 the Magistrate Judge issued the R & R recommending that Ms. Edwards's Motion be granted. Niagara filed its objections on November 4, 2008.

## III. Legal Standard

Summary judgment is appropriate only when the pleadings and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A dispute over a fact will preclude summary judgment if the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although in considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 255, 106 S.Ct. 2505, the non-movant must do more than "simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the nonmovant must present affirmative evidence beyond mere allegations to show that a genuine issue of material fact does exist. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. Furthermore, the court must evaluate the evidence "through the prism of the substantive evidentiary burden" at trial. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505.

## IV. Analysis

Niagara has made four objections to the R & R. After careful consideration of Niagara's objections, the court agrees with the Magistrate Judge's rulings.

### A. Whether the Answering Machine Messages are "Communications" as Defined by FDCPA

■ Niagara objects to the Magistrate Judge's conclusion that the answering machine messages it left for Ms. Edwards were "communications" covered by the FDCPA. It claims they were not communications because the messages did not convey any specific information about a debt, nor do they implicate the legislative intent to stop abusive practices. In support of its objection, Niagara references its brief opposing summary judgment. The court has reviewed Niagara's brief, and finds that it does not include any additional objections. Therefore the court reviews *de novo* Niagara's objection that the messages do not meet the statutory definition of "communication."

15 U.S.C. § 1692a(2) provides that "[t]he term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." The Magistrate Judge found that the messages here, which did not convey specific information about the debt, but rather, instructed Ms. Ed-

wards to return a call would be considered "communications" under the statute. The Magistrate Judge reasoned, and this court agrees, that the messages at issue here *indirectly* conveyed information about a debt. The messages referenced an "important" matter—a debt; contained information regarding a file number and whom to contact about the debt; and were left for the purpose of collecting a debt. Though the word "debt" was never used, no one disputes that the calls were about the debt allegedly owed by Ms. Edwards that Niagara was seeking to collect. The phone messages indirectly conveyed information concerning this debt.

The Magistrate Judge also correctly notes that the majority of courts that have addressed this issue have held that a phone message referencing an "important matter" or similar language may be considered a "communication" under the FDCPA. *See e.g., Belin v. Litton Loan Servicing, LP,* 8:06–cv–760–T–24 EAJ, 2006 WL 1992410, at *4 (M.D.Fla. July 14, 2006); *Masciarelli v. Richard J. Boudreau & Assocs., LLC,* 529 F.Supp.2d 183, 185–86 (D.Mass.2007); *Costa v. Nat'l Action Fin. Servs.,* 2007 WL 4526510, at *5 (E.D.Cal. Dec.19, 2007); *Foti v. NCO Fin. Sys., Inc.,* 424 F.Supp.2d 643, 654–60 (S.D.N.Y.2006); *Hosseinzadeh v. M.R.S. Assocs., Inc.,* 387 F.Supp.2d 1104, 1116 (C.D.Cal.2005); *but see Biggs v. Credit Collections, Inc.,* No. CIV–07–0053–F, 2007 WL 4034997, at *4 (W.D.Okla. Nov.15, 2007).

Indeed, at least one court within the Eleventh Circuit has reached this conclusion. In *Belin,* the Middle District of Florida found that phone messages that referenced the name of a company, gave directions to return the phone call, but did not disclose that the call came from a debt collector were "communications" under the FDCPA. It rejected the argument, like the one made here, that the messages

were not "communications" because the messages "did not convey information regarding a debt." *Belin,* 2006 WL 1992410, at *4. The court reasoned that the messages "conveyed information about a debt indirectly, since the purpose of the message is to get the debtor to return the call to discuss the debt." *Id.*

The Northern District of Illinois, citing *Belin* with approval, provides an additional reason. In *Ramirez v. Apex Financial Management, LLC,* 567 F.Supp.2d 1035 (N.D.Ill.2008), the court asserted that such a narrow construction of the statute would be at odds with the statute's purpose and provide a loophole for debt collectors. The court explained, "[t]he FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct.... To adopt [Defendant's] view ... [would mean] so long as they avoid mentioning the underlying debt, [it] would absolve them of liability." *Id.* at 1042.

For these reasons, the court ADOPTS the R & R's conclusion that the phone messages at issue are "communications" under the FDCPA.

### B. Did the Messages Violate 15 U.S.C. §§ 1692d(6) and 1692e(11)

Niagara maintains that even if this court finds that the phone messages are "communications," it objects to the R & R's conclusion that the messages violated 15 U.S.C. §§ 1692d(6) and 1692e(11). It claims that there is no violation because the messages contained no harassing language. Again, Niagara attempts to incorporate additional arguments stated in its prior brief simply by reference. Niagara objects "for the reasons stated in Niagra's brief opposing summary judgment." (Def.'s Objections 22.) As previously discussed, this does not constitute a "specific written objection[ ] to the proposed findings and recommendation" as required by Federal Rule of Civil Procedure 72(b)(2).

■ However, upon review of the brief, the court does find a single additional argument that is included in Niagara's brief, but not included as a specific objection to the R & R. That is the claim that there is no violation because the messages were not false, deceptive, or misleading. Though the court need not give *de novo* review on this point, it is within the court's discretion to do so. *See Chamblee,* 518 F.Supp. at 520 ("When a party fails to object to the magistrate's report, then, the court may determine for itself what level of scrutiny is called for."). The court will review *de novo* whether Niagara violated 15 U.S.C. §§ 1692d(6) and 1692e(11) where it contends that the messages did not harass or contain false, deceptive, or misleading information.

15 U.S.C. § 1692d reads as follows:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, *the following conduct is a violation of this section:*

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, *the placement of telephone calls without meaningful disclosure of the caller's identity.*

15 U.S.C. § 1692d (emphasis added). As the Magistrate Judge found, it is undisputed that Niagara's phone calls did not identify the caller as an employee or agent of a debt collection agency, nor did the phone messages state that the purpose was an attempt to collect a debt. Therefore, the Magistrate Judge found that Niagara violated 15 U.S.C. § 1692d(6) by placing telephone calls without making any meaningful disclosure of the identity of the caller. Indeed, Niagara has not objected to the R & R's statement that Niagara "does not dispute that the pre-recorded telephone messages at issue did not contain any 'meaningful disclosure of the caller's identity' as required by 15 U.S.C. § 1692d(6).'" (R & R ——.)

Instead, Niagara objects because it contends the phone calls did not also contain harassing language. Niagara claims that to violate 15 U.S.C. § 1692d, the messages must have contained harassing language. But, as the Magistrate Judge correctly found, this is not required under the statute. 15 U.S.C. § 1692d(6) spells out that it is a violation to place a phone call without making a meaningful disclosure of the caller's identity. Therefore, it is sufficient that the calls did not contain this meaningful disclosure. The court will not impose an additional requirement not found in the statute's text.

In *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168 (11th Cir.1985), the Eleventh Circuit stated that "when read in context, *subsec-*tion (2) was meant to deter offensive language which is at least akin to profanity or obscenity." *Id.* at 1178 (emphasis added). But it does not follow that in order to find a violation under subsection (6), a court must find no meaningful disclosure of the caller's identity, *and also* such offensive language. Where, as here, there is no dispute that Niagara failed to include a meaningful disclosure of the caller's identity in its messages, summary judgment is appropriate for a claim brought under 15 U.S.C. § 1692d(6). *See also Masciarelli,* 529 F.Supp.2d at 186; *Hosseinzadeh,* 387 F.Supp.2d at 1112.

■ Likewise, the court finds that summary judgment is appropriate for Ms. Edwards's claim brought under 15 U.S.C. § 1692e(11). 15 U.S.C. § 1692e(11) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, *the following conduct is a violation of this section:*

. . . .

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and *the failure to disclose in subsequent communications that the communication is from a debt collector,* except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11) (emphasis added). Again, Niagra does not dispute that the messages failed to disclose that the communication was from a debt collector. The

R & R stated, and this court agrees, that this is plainly a violation of the statute.

Nevertheless, Niagara argued in its brief that there was no violation because the information in the message was not "false, deceptive, or misleading representation."[1] Niagara may not agree that its conduct was false, deceptive, or misleading. But its undisputed conduct is defined as such, and thus prohibited, under the statute.

### 1. "Bona Fide Error"

█ The FDCPA allows a defendant to avoid liability for violation where it has made a "bona fide error." 15 U.S.C. § 1692k(c). The Magistrate Judge found that Niagara would be unable to establish that it made a "bona fide error" because the alleged error was intentional. Niagara objects to this finding because it claims that the defense is available to intentional conduct, and for misinterpretations of the law. The court agrees with the conclusion set forth in the R & R.

15 U.S.C. § 1692k(c) provides:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). This means that Niagara has the burden of establishing that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the error. *Sparks v. Phillips & Cohen Assocs., Ltd.*, No. 07–0477–WS–C, 2008 WL 2540679, at *10

(S.D.Ala. June 20, 2008) (citing *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006)).

Niagara's first objection is that the bona fide error defense applies to intentional conduct that was not an intentional violation of the FDCPA. It claims that while its conduct was intentional, the resulting violation was not. Second, Niagara asserts that the bona fide error defense is available to mistakes of law. It contends that its alleged error was the result of a mistake of law.

Niagara relies on precedent from outside this Circuit to support its contentions, and has not directed the court to any binding precedent from the Eleventh Circuit. The court recognizes that several Circuits have held that the bona fide error defense is available for intentional conduct, *see e.g., Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir.1998), and that there appears to be a Circuit split regarding whether a mistake of law may qualify as a bona fide error, *compare Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001) (stating that the bona fide error defense does not apply to mistakes of law), *and Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 779 (9th Cir.1982) (mistake of law "insufficient by itself to support the bona fide error defense"), *with Johnson*, 443 F.3d at 727, *and Nielsen v. Dickerson*, 307 F.3d 623, 640–41 (7th Cir.2002). However, the court need not address these issues because it finds that summary judgment is otherwise warranted.

Summary judgment is appropriate because there is no question of material fact

---

**1.** Niagra also argued in its brief against the summary judgment motion that the disclosure requirement was inapplicable after previous disclosure in earlier communications. However, this interpretation is wrong under the plain terms of the statute. The disclosure requirement applies to initial and *"subsequent communications."* 15 U.S.C. § 1692e(11) (emphasis added).

that Niagara did not maintain procedures "reasonably adapted" to avoid the specific error at issue. It is undisputed that the alleged error, i.e., failing to disclose the source of the call, was the result of company policy. Moreover, by Niagara's own admission, its procedures were not designed to avoid the specific error at issue. Instead, Niagara's procedures were designed to prevent violation of another section of the FDCPA. But it may not rely on procedures meant to avoid violating one section of the FDCPA to shield it from liability for violating every other section as well. *See Valencia v. Affiliated Group, Inc.*, No. 07–61381–CIV, 2008 WL 4372895, at *4 (S.D.Fla. Sept.24, 2008) ("the Court must evaluate whether Defendant's procedures were 'reasonably adapted' to avoid **the specific error at issue**"); *see also Johnson*, 443 F.3d at 729; *Jenkins v. Heintz*, 124 F.3d 824, 834–35 (7th Cir. 1997).

For the reasons stated in this Order, the court ADOPTS the conclusions of the R & R regarding the bona fide error defense.

### 2. Damages

■ Finally, Niagara objects to the Magistrate Judge's recommendation to award Ms. Edwards the maximum award allowed under the statute, $1,000.00. It objects because it argues that the damage award is excessive and because it contends that there is a genuine issue of material fact regarding imposing the maximum damage award considering the "nature of noncompliance."

The court finds that an award of $1,000.00 is appropriate. 15 U.S.C. § 1692k(b)(1) instructs courts to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." It is undisputed that the conduct at issue is company policy. This makes vio-

lating the FDCPA an ordinary course of business for Niagara, and the nature of noncompliance sufficiently egregious to impose the maximum of $1,000.00. Niagara's own admission of its company policy provides evidence of the frequency of its violation. Indeed, Ms. Edwards received multiple phone calls in violation of the FDCPA.

Finally, the court notes that even if the violation was not intentional, it was at a minimum, measured and calculated. *See In re Martinez*, 266 B.R. 523, 537 (Bankr. S.D.Fla.2001). Niagara has asserted that it developed its company policy after consulting legal sources. It maintains that it attempted to avoid a violation. But, Niagara deliberately choose this policy, and must face the consequences of its decision. Considering all of these factors, the court agrees with the Magistrate Judge that a $1,000.00 award of statutory damages is appropriate.

### V. Summary

For the foregoing reasons, the court ADOPTS the Final Report and Recommendation of the Magistrate Judge [Doc. No. 19], which together with the foregoing shall constitute the Order and Judgment of the court. Plaintiff's Motion for Summary Judgment [Doc. No. 16] is GRANTED. Statutory damages in the amount of $1,000.00 are hereby awarded to Ms. Edwards.

To the extent that Ms. Edwards seeks an award of attorneys fees, she shall file all documentation required in this Circuit to support such a claim, within 20 days of the date of this Order. If Niagara objects, it should file its objections within 20 days of Ms. Edwards's submission. The court will resolve the issue of attorneys fees by separate Order.

## ORDER

C. CHRISTOPHER HAGY, United States Magistrate Judge.

Attached is the report and recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Civil Local Rule 72.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir.1983).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

## REPORT AND RECOMMENDATION ON A MOTION FOR SUMMARY JUDGMENT

Plaintiff filed the above-captioned action on September 28, 2007. In the Complaint [1], Plaintiff alleges that Defendant Niagara Credit Solutions, Inc. ("Niagara") violated the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692 *et seq.*, when agents of Niagara communicated with Plaintiff in the course of attempting to collect a debt. Compl. [1]. According to the allegations in the Complaint, Plaintiff contends that, in or around September of 2007, employees or agents of Niagara left two voice messages on the Plaintiff's answering machine that failed to state that the message was from Niagara or from a debt collector, failed to state that the message was in reference to collecting a debt, and failed to state that any information obtained would be used for the purpose of collecting a debt. Compl. [1] at ¶¶ 14–19.

The action is now before the Court on Plaintiff's Motion for Summary Judgment [16]. For the reasons discussed below, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ 16] be **GRANTED** and that judgment be entered in favor of Plaintiff in the amount of $1,000.00.

## I. BACKGROUND FACTS

Unless otherwise indicated, the Court draws the undisputed facts from Plaintiff's "Statement of Undisputed Material Facts" ("SMF"), filed in support of her Motion for Summary Judgment. If, however, Defendant has disputed a specific fact and pointed to evidence in the record supporting its version of events, the Court has viewed all evidence and factual inferences in the light most favorable to Defendant, the non-movant, as required when considering a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir.1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir.1993). Accordingly, the following facts are either not disputed or are viewed in the light most favorable to Defendant.

Defendant is a debt collector subject to the provisions of the FDCPA. SMF at ¶ 1; *see* Defendant's Statement of Additional Material Facts that Present a Genuine Issue for Trial ("Def. SMF") [17] at ¶ 1. Defendant attempted to collect a con-

sumer debt from Plaintiff. SMF at ¶ 2. In the course of attempting to collect the debt from Plaintiff, Defendant contacted Plaintiff through letters and phone calls and left a series of approximately 14 messages on Plaintiff's answering machine from July through October of 2007. SMF at ¶¶ 3–5, 8; Def. SMF at ¶ 2. One of the voice messages left for Plaintiff stated as follows: "This is an important message for Brenda Edwards. Please return this message at 1–800–381–0416 between the hours of 8 am and 9 pm Eastern Standard Time." SMF at ¶ 9.

On or about September 26, 2007, Defendant left a pre-recorded message on Plaintiff's answering machine that stated that the message was "important" but did not state the name of Defendant. SMF at ¶¶ 12–14. In early October of 2007, Defendant left a message on Plaintiff's answering machine that stated as follows: "This message is intended for Brenda Edwards. Please contact Jennifer [last name not clear] at 1 800 381 0416, my extension is 220. When returning my call have your file number available, it's 1250740." SMF at ¶ 15. Defendant also left a message on Plaintiff's answering machine in the middle of October of 2007 that stated as follows: "Brenda Edwards, contact Mrs. Strickland at 1–800–381–0416 extension 220. When returning the call have your file number available, please, 1250740." SMF at ¶ 16.

According to Defendant, it is company policy concerning answering machine messages for the caller NOT to indicate that the call is from "Niagara Credit Solutions, Inc.," nor to indicate that the call is for the "purpose of collecting a debt." Def. SMF at ¶ 18; *see* Janocsko Decl. at ¶ 18.

## II. *DISCUSSION*

### A. *SUMMARY JUDGMENT STANDARD*

Summary judgment is authorized when "the pleadings, the discovery and disclo-

sure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 175, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Bingham, Ltd. v. United States,* 724 F.2d 921, 924 (11th Cir.1984). The movant carries this burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the nonmoving party.

Once the moving party has adequately supported its motion, the nonmoving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Ryder Int'l Corp. v. First American Nat'l Bank,* 943 F.2d 1521, 1523

(11th Cir.1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed facts that do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment. *Id.*

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Id.* An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. 2505. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 259, 106 S.Ct. 2505.

## B. *THE FAIR DEBT COLLECTION PRACTICES ACT*

Plaintiff contends that the voice messages left by Defendant on her answering machine violated the FDCPA because the messages failed to identify Niagara as the caller and failed to disclose that the messages were from a debt collector. In particular, Plaintiff argues that Defendant violated 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(11).

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA is a strict liability statute and thus does not require a showing of intentional conduct on the part of a debt collector; furthermore, a single violation of the statute is sufficient to establish civil liability. *See Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993). In order to establish a claim under the FDCPA, Plaintiff must show that the Defendant is a debt collector and that it engaged in some act prohibited by the FDCPA, or failed to disclose information required by the FDCPA, in attempting to collect from Plaintiff on her consumer debt. *See Kaplan v. Assetcare, Inc.,* 88 F.Supp.2d 1355, 1360–61 (S.D.Fla.2000).

In determining whether the Defendant has violated the FDCPA, the Court must apply the objective test focused on how the "least sophisticated consumer" would be affected by Defendant's collection practices. *See Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1172–75 (11th Cir.1985). Courts have interpreted the "least sophisticated consumer" standard in a way that "protects debt collectors against liability for unreasonable misinterpretations of collection notices." *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993) (collection notice valid although it did not expressly inform debtors that they had a right to contest a portion of the debt

where that right was implicit in debtors' right to challenge the entire debt).

In the instant action, it is undisputed that Defendant is a debt collector as that term is defined in the FDCPA. It is further undisputed that Defendant left at least two pre-recorded messages on Plaintiff's answering machine that did not identify Niagara or state that the call was from a debt collection agency. Plaintiff argues that the messages left on her answering machine violated two separate provisions of the FDCPA: 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(11). In response, Defendant argues that: the messages left on Plaintiff's answering machine were not "communications" as that term is defined under the FDCPA; the messages were not harassing, oppressive or abusive in violation of 15 U.S.C. § 1692d(6); the messages were not false, misleading, or deceptive in violation of 15 U.S.C. § 1692e(11), and, even if the messages violated the FDCPA, Defendant is entitled to the "bona fide error" defense.

### 1. Were the Messages "Communications" under the FDCPA?

In response to Plaintiff's contention that the messages left on Plaintiff's answering machine were in violation of the FDCPA, Defendant first argues that there can be no violation of the FDCPA unless there is a "communication." *See* Def. Br. [17] at 12 ("The FDCPA only applies to 'communications' with debtors."). Defendant has provided no citation in support of that argument, however, and the Court concludes that certain provisions of the FDCPA apply to conduct that does not necessarily fall within the definition of "communications." *See* 15 U.S.C. § 1692d(6) (prohibiting debt collectors from "the placement of telephone calls without meaningful disclosure of the caller's identity" without any reference to "communications").

Furthermore, even if the FDCPA did apply only to "communications" from debt collectors, the Court finds that the messages at issue in this action would be considered "communications" as that term is defined by the FDCPA. The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Defendant argues that, because the messages did not convey any specific information about the debt but merely instructed Plaintiff to call a certain telephone number, the messages at issue are not "communications" under the FDCPA. *See Biggs v. Credit Collections, Inc.,* 2007 WL 4034997, at *4 (W.D.Okla. Nov.15, 2007) ("The transcript of the voice mail messages demonstrates that the voice mails 'convey[ed]' no 'information regarding a debt.' No amount of liberal construction can broaden the statutory language to encompass the words recorded in these voice mails.").

The Court rejects Defendant's argument that the messages in question are not covered by the FDCPA because they were not "communications." As discussed above, the FDCPA defines "communication" as "the conveying of information regarding a debt directly or *indirectly* to any person through any medium." 15 U.S.C. § 1692a(2) (emphasis added). The Court notes that the messages left by Defendant on Plaintiff's answering machine at issue in this action advised Plaintiff whom to call. While the messages did not advise Plaintiff to call that person regarding a debt, by advising whom to call, the message indirectly conveyed information about a debt. Moreover, the two messages left in October of 2007 referenced a "file number" for Plaintiff to use when returning the call. Such information could be construed as conveying indirect information about Plaintiff's debt although the message did not contain the word "debt" itself.

The majority of courts that have addressed this issue have concluded that messages from a debt collector left on a consumer's voicemail or answering machine requesting that the consumer call a phone number regarding an "important matter" (or similar such language) may be considered "communications" under the FDCPA because the debt is referenced indirectly if not directly. *See, e.g., Masciarelli v. Richard J. Boudreau & Assoc.,* 529 F.Supp.2d 183, 186 (D.Mass.2007); *Costa v. National Action Financial Serv.,* 2007 WL 4526510 at *5 (E.D.Cal.2007); *Foti v. NCO Financial Sys.,* 424 F.Supp.2d 643, 654–60 (S.D.N.Y.2006); *Hosseinzadeh v. M.R.S. Assocs., Inc.,* 387 F.Supp.2d 1104, 1116 (C.D.Cal.2005). *But see Biggs v. Credit Collections, Inc.,* 2007 WL 4034997, at *4 (W.D.Okla. Nov.15, 2007).

As the Central District of California explained in the *Hosseinzadeh* case:

The Court concludes that the messages left by defendant on plaintiff's answering machine constitute "communications." The messages at issue appear to fall within § 1692a(2)'s definition of "communication." *See* Ahart § 2:43 (citing FTC Staff Commentary on FDCPA, 53 Fed.Reg. 50103 (Dec. 13, 1988)) (rejecting contentions that "contacts that do not explicitly refer to the debt are not 'communications' and, hence, do not violate any provision where that term is not used" and concluding that some contacts that do not mention debt may refer to the debt "indirectly," thereby constituting communications). While the messages may not technically mention specific information about a debt or the nature of the call, § 1692a(2) applies to information conveyed "directly or indirectly." Defendant conveyed information to plaintiff, including the fact that there was an important matter that she should attend to and instructions on how to do so. Defendant further admits that

the calls were merely the first step in a process designed to communicate with plaintiff about her alleged debt.

*Hosseinzadeh,* 387 F.Supp.2d at 1116; *see also Foti,* 424 F.Supp.2d at 657 ("Indeed, a narrow reading of the term 'communication' to exclude instances such as the present case where no specific information about a debt is explicitly conveyed could create a significant loophole in the FDCPA, allowing debtors to circumvent the § 1692e(11) disclosure requirement, and other provisions of the FDCPA that have a threshold 'communication' requirement, merely by not conveying specific information about the debt.").

In the instant action, the messages left on Plaintiff's answering machine referenced an "important" matter and contained information regarding whom to contact and a file number that Plaintiff should use when returning the call. Given these facts, the Court finds that the messages left by Defendant on Plaintiff's answering machine are "communications" under the FDCPA because they were telephone calls placed to Plaintiff for the purpose of attempting to collect a debt, and thus indirectly referenced the debt even if the messages did not contain specific information about the debt.

### 2. *Did the Messages Violate 15 U.S.C. § 1692d(6)?*

Plaintiff contends that Defendant violated 15 U.S.C. § 1692d(6) by leaving prerecorded messages on her answering machine that failed to identify the caller as being an employee or agent of Niagara.

15 U.S.C. § 1692d(6) states in relevant part as follows:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general

application of the foregoing, the following conduct is a violation of this section:

. . .

(6) Except as provided in section 1692b [1] of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(6).

It is undisputed that the messages at issue did not state that they were from Niagara, did not identify the caller as an employee or agent of a debt collection agency, and did not state that the purpose of the call was to attempt to collect a debt. Defendant does not contest that, on or around September 26, 2007, it left a message on Plaintiff's answering machine that stated that the message was "important" and did not leave the name of the caller. SMF at ¶¶ 13–14. Defendant also does not dispute that, in early October of 2007, Defendant left a message on Plaintiff's answering machine that stated as follows: "This message is intended for Brenda Edwards. Please contact Jennifer [last name not clear] at 1 800 381 0416, my extension is 220. When returning my call have your file number available, it's 1250740." SMF at ¶ 15. Defendant also left a message on Plaintiff's answering machine in the middle of October of 2007 that stated as follows: "Brenda Edwards, contact Mrs. Strickland at 1–800–381–0416 extension 220. When returning the call have your file number available, please, 1250740." SMF at ¶ 16.

Plaintiff argues that, because the callers in the messages identified themselves only as "Jennifer" [last name unclear] and "Mrs. Strickland," and did not identify themselves as agents or employees of Niagara or as debt collectors who were calling regarding a debt, the callers did not make a "meaningful disclosure of the caller's identity" as required by 15 U.S.C. § 1692d(6). The Court agrees. Indeed, Defendant does not dispute that the pre-recorded telephone messages at issue did not contain any "meaningful disclosure of the caller's identity," as required by 15 U.S.C. § 1692d(6).

Instead, Defendant argues that, despite the failure of its callers to identify themselves as calling on behalf of Niagara, the messages did not violate 15 U.S.C. § 1692d(6) because the messages did not harass, oppress, or abuse the Plaintiff. That section, however, *defines* the specific conduct deemed to harass, oppress, or abuse to include "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Based on a plain reading of the statute, the Court concludes that, when a debt collector places a telephone call to a consumer without meaningful disclosure of the identity of the caller, it is not required that the telephone calls *also* be considered harassing, oppressing or abusive to the consumer in order to be in violation of 15 U.S.C. § 1692d(6). Defendant has not cited to a single case holding to that effect, and the Court has discovered none.

Accordingly, because it is undisputed that the messages failed to identify the callers as being employed by or associated with Niagara in any way, the Court finds that Defendant violated 15 U.S.C. § 1692d(6) by placing telephone calls to Plaintiff without making any meaningful disclosure of the identity of the caller. *See Wright v. The Credit Bureau of Georgia, Inc.*, 548 F.Supp. 591 (N.D.Ga.1982) ("Rather, the 'meaningful disclosure' re-

---

**1.** 15 U.S.C. § 1692b addresses communications from a debt collector to a person other than the consumer who owes the debt for the purpose of acquiring location information about the consumer. *See* 15 U.S.C. § 1692b.

It is undisputed that none of the alleged messages on Plaintiff's answering machine at issue in this action fall under the provisions of 15 U.S.C. § 1692b.

quired by section 1692d(6) has been made if an individual debt collector who is employed by a debt collection company accurately discloses the name of her employer and the nature of her business and conceals no more than her real name."); *see also Masciarelli v. Richard J. Boudreau & Assoc.,* 529 F.Supp.2d 183, 186 (D.Mass. 2007) ("Given the clear and unambiguous language of 15 U.S.C. Section 1692 *et seq.,* a collection agent must follow the disclosure requirement of identifying himself as a debt collector in all communications. Where, as here, the disclosure was not provided, summary judgment is appropriate."); *Hosseinzadeh v. M.R.S. Assocs., Inc.,* 387 F.Supp.2d 1104, 1112 (C.D.Cal. 2005) ("The Court concludes that defendant violated § 1692d(6) when its employees failed to disclose defendant's identity and the nature of defendant's business in the messages left on plaintiff's answering machine.").

### 3. *Did the Messages Violate 15 U.S.C. § 1692e(11)?*

Plaintiff further argues that, in addition to violating 15 U.S.C. § 1692d(6), Defendant also violated 15 U.S.C. § 1692e(11) by leaving pre-recorded messages on her answering machine that failed to identify the caller as being an agent or employee of a debt collector.

15 U.S.C. § 1692e(11) states, in relevant part, as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communica-

tion, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and **the failure to disclose in subsequent communications that the communication is from a debt collector,** except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11) (emphasis added).

Defendant first argues that the messages left on Plaintiff's answering machine did not violate 15 U.S.C. § 1692e(11) because they were not "communications" as that term is defined by the statute. As discussed above, the Court rejects this argument and concludes that the messages at issue fall under the definition of "communication" for the purposes of the FDCPA.

Defendant argues further that, even if the messages could be considered "communications" under the FDCPA, the messages at issue did not violate 15 U.S.C. § 1692e(11) because the messages did not contain any information that was "false, deceptive, or misleading." The Court rejects this argument for the same reasons it rejects Defendant's argument that it did not violate 15 U.S.C. § 1692d(6) because Plaintiff failed to demonstrate that the messages were harassing, abusive or oppressive. The specific conduct that is prohibited is set out in the statute: "failure to disclose in subsequent communications that the communication is from a debt collector" is a violation of 15 U.S.C. § 1692e(11). Because the statute specifically defines the conduct that is prohibited, the Court finds that Plaintiff is not required to present additional evidence that the conduct is also "false, deceptive, or misleading."

The Court thus finds that the messages at issue violated 15 U.S.C. § 1692e(11) be-

cause they were communications from a debt collector to a consumer in which the debt collector (Defendant) failed to identify the communication as coming from a debt collector. Defendant nevertheless argues that, even if the messages otherwise violated 15 U.S.C. § 1692d(6) and/or 15 U.S.C. § 1692e(11), it is entitled to assert the "bona fide error" defense, as set forth in 15 U.S.C. § 1692k(c).

### 4. Is Defendant Entitled to the "Bona Fide Error" Defense?

Defendant argues that, even if the messages were otherwise in violation of the FDCPA, it is not liable to Plaintiff under the "bona fide error" defense set forth in 15 U.S.C. § 1692k(c), which provides as follows:

**(c) Intent**

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

As a general rule, "an FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was 1) unintentional, 2) a bona fide error, and 3) made despite the maintenance of procedures reasonably adapted to avoid the error." *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir.2006); *see also Sparks v. Phillips & Cohen Assoc.*, 2008 WL 2540679 at *10 (S.D.Ala. June 20, 2008); *Canady v. Wisenbaker Law Offices, P.C.*, 372 F.Supp.2d 1379, 1383 (N.D.Ga.2005) (Hunt, J.).

Thus, in order for Defendant to escape liability for a violation of the FDCPA, it must first establish by a preponderance of evidence that the violation was not intentional but was instead unintentional and a "bona fide error." In the instant action, the Court finds that Defendant is unable to establish that it made an unintentional "bona fide error" because it admits that it is company policy for callers leaving answering machine messages for consumers not to identify themselves as working for Niagara and not to identify the purpose of the call as an attempt to collect a debt. Def. SMF at ¶ 18; *see* Janocsko Decl. at ¶ 18. In sum, Defendant admits that it was entirely *intentional* for the callers to fail to identify themselves as calling on behalf of Niagara for the purpose of attempting to collect a debt, as required by 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(11).

Defendant argues that it was company policy for callers leaving answering machine messages to avoid identifying themselves as calling from Niagara or calling regarding the collection of a debt because the FDCPA prohibits a debt collector from communicating with any person other than the consumer, his or her attorney, a consumer reporting agency, the creditor, the attorney of the creditor, or the attorney of the debt collector, regarding the debt. 15 U.S.C. § 1692c(b). According to Defendant, because it is possible that the consumer may play the answering machine message in front of a third party or that a third party might overhear or intercept a message on an answering machine, the company employees were instructed not to identify themselves as representing Niagara or a debt collector when leaving messages on a consumer's answering machine.

As one court explained in rejecting a similar argument made by a debt collector, it is the method chosen by the debt collector that places them in the position of possibly violating one section of the statute by complying with another, and the debt collector is always free to choose other methods:

The premise of CCS' argument is that they are expressly entitled to use pre-recorded messages for debt collection. "However, just because a debt collector is permitted to continue to attempt to collect the debt does not entitle the collector to use any means, even if those means are the most economical or efficient." *Foti v. NCO Financial Systems*, 424 F.Supp.2d 643, 659 (S.D.N.Y.2006) (emphasis in original) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993)). *See, e.g., Clomon*, 988 F.2d at 1321 ("It is apparent that mass mailing may sometimes be the only feasible means of contacting a large number of delinquent debtors, particularly when many of those debtors owe relatively small sums. But it is also true that the FDCPA sets boundaries within which debt collectors must operate."). The Court has no authority to carve an exception out of the statute just so CCS may use the technology they have deemed most efficient. *Cf. Foti*, 424 F.Supp.2d at 659 (in holding that a pre-recorded message which did not identify the caller as a debt collector employee violated the FDCPA, the court found that "[i]t is only because of the method of debt collection selected—calling and leaving . . . pre-recorded messages— that [the defendant debt collector] is faced with its potential dilemma."). CCS has been cornered between a rock and a hard place, not because of any contradictory provisions of the FDCPA, but because the method they have selected to collect debts has put them there. *Leyse v. Corporate Collection Serv.*, 2006 WL 2708451 at *5 (S.D.N.Y. Sept.18, 2006).

In sum, Defendant's argument is that it should be excused from an intentional violation of two separate subsections of the FDCPA because it was trying to avoid committing a possible violation of another section. Defendant, however, cites no authority for the proposition that an inadvertent, unintended "communication" with a third party constitutes a violation of the FDCPA. Yet, Defendant contends that, in the face of a wealth of precedent holding that it is a violation of the Act not to disclose a caller's identity, it chose to protect against a speculative, unreasonable construction of the statute by intentionally violating its express prohibition. Such a "mistake" of law is not the type of "bona fide error" that excuses a violation of the FDCPA.

Defendant can not invoke the "bona fide error" defense without showing that the error was unintentional. In this case, Defendant has admitted that the "error" was entirely intentional, and indeed, was company policy. Under these circumstances, Defendant is not entitled to assert the "bona fide error" defense.

### 5. Damages

In her Motion for Summary Judgment, Plaintiff seeks the maximum amount of statutory damages of $1,000.00. *See* 15 U.S.C. § 1692k(a)(2)(A). The Court finds that, based on Defendant's admission that it is company policy for callers leaving answering machine messages not to identify themselves as calling on behalf of Niagara or calling for the purpose of attempting to collect a debt, that Plaintiff should be awarded the maximum amount of statutory damages.

### III. RECOMMENDATION

For all the above reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [16] be **GRANTED** and that judgment be entered in favor of Plaintiff in the amount of $1,000.00.

If this Report and Recommendation is adopted by the District Court and judg-

ment is entered in favor of Plaintiff, Plaintiff may move for an award of costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1629k(a)(3), which motion should be submitted by the Clerk to the undersigned.

October 20, 2008.